Lillian **CAULDER**, Appellant,

v.

**DURHAM HOUSING AUTHORITY, and C. S. Oldham, Carl R. Harris, E. W. Midgette, H. F. Seeman, Jr., Charles A. Roach and Artis Plummer, individually and in their official capacity as members of the Durham Housing Authority,** Appellees.

**No. 14095.**

United States Court of Appeals, Fourth Circuit.

Argued June 2, 1970.

Decided Nov. 6, 1970.

Charles Lawrence James, Winston Salem, N. C., for appellant.

William Y. Manson, Durham, N. C. (Daniel K. Edwards, Durham, N. C., on brief) for appellees.

Before SOBELOFF and WINTER, Circuit Judges, and LEWIS, District Judge.

WINTER, Circuit Judge:

In Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Supreme Court held that the Durham Housing Authority, one of the defendants in this·case, must comply with a Department of Housing and Urban Development (HUD) circular which requires that before a tenant can be evicted he must be given notice of the reasons for the eviction and an opportunity to reply to those reasons.[1]

---

1. The pertinent portions of the circular follow:

Within the past year increasing dissatisfaction has been expressed with eviction practices in public low-rent housing projects. During that period a number of suits have been filed throughout the United States generally challenging the right of a Local Authority to evict a tenant without advising him of the reasons for such eviction.

Since this is a federally assisted program, we believe it is essential that no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish.

In addition to informing the tenant of the reason(s) for any proposed eviction action, from this date each Local Authority shall maintain a written record of every eviction from its federally assisted public housing. Such records are to be available for review from time to time by HUD representatives and shall contain the following information:

1. Name of tenant and identification of unit occupied.

2. Date of notice to vacate.

3. Specific reason(s) for notice to vacate. For example, if a tenant is being evicted because of undesirable actions, the record should detail the actions which resulted in the determination that eviction should be instituted.

4. Date and method of notifying tenant

In that case the Court declined, on the ground of prematurity, to define the incidents of a hearing which would comport with the requirements of due process. Those questions are before us now in plaintiff's suit for a declaratory judgment that she was denied due process of law by the termination of her lease and an injunction to prohibit the Housing Authority from evicting her or making any attempt to evict her without compliance with her due process rights.

The district court dismissed the complaint on the ground that even if federal jurisdiction was present "justice and comity would best be served by giving the North Carolina courts an opportunity to hear petitioner's claim." We believe that plaintiff has alleged the denial of due process rights for which redress is presently available in the federal courts. We reverse and remand the case to the district court for further proceedings consistent with our views.

## I

Since 1963, plaintiff has been a tenant in a federally assisted public housing project owned and operated by the Housing Authority of the City of Durham, North Carolina. The Housing Authority is an agency of the State of North Carolina. N.C.Gen.Stat. § 157–1 et seq. She occupies an apartment under a written lease creating a month-to-month tenancy with provision for automatic renewals for successive terms of one month unless either party gives notice in writing fifteen days before the end of any month that the lease will terminate at the expiration of that term. On February 19, 1969, she attended a meeting with the Housing Authority project manager, at which she was informed that several of her neighbors had complained of the conduct and morals of her children. The identity of the complaining neighbors, however, was not disclosed. On March 1, 1969, she received written notice from the Housing Author-

ity that her lease would be terminated for cause at the expiration of the current month. The letter specified neither the names of the complainants nor the offenses of which her children were accused but asserted that she had been previously informed of the causes.

The plaintiff obtained legal assistance and requested a written list of specific charges. A meeting with the executive director of the Housing Authority was arranged and held on March 18. At the meeting she and her attorney were informed that the meeting constituted "an administrative hearing"—presumably intended to comply with the decision in *Thorpe*. The executive director read aloud from certain papers which he represented as affidavits. The papers contained complaints about the plaintiff's children, which included allegations of specific immoral acts, all of which the plaintiff denied. Neither plaintiff nor her attorney was permitted to see the affidavits nor were the names of the complainants disclosed.

Nine days later a hearing was conducted before the commissioners of the Housing Authority. The commissioners denied the requests of plaintiff's attorney for the specifics of the charges, the names of the complainants, and the rules governing the manner in which the hearing would be conducted. The evidence of the complaining witnesses was heard in camera with no opportunity for plaintiff to challenge or cross-examine them. Her attorney, however, was permitted to introduce affidavits from neighbors who considered plaintiff a satisfactory tenant. Plaintiff was not told the names of the persons making complaints nor the dates of specific acts of misconduct or immoral behavior on the part of her children.

When the Housing Authority persisted in its decision not to renew her lease, she brought suit in the district court under 28 U.S.C.A. § 1343(3) and 42 U.S. C.A. § 1983. Her complaint sought a

with summary of any conferences with tenant, including names of conference participants.

5. Date and description of final action taken.

declaratory judgment that she was denied due process of law by the termination of her lease without adequate notice of the specific reasons for its termination and without a hearing (1) at which the names of the complainants would be disclosed, (2) at which she would be able to cross-examine the complainants and other witnesses against her, (3) at which the complainants would give their evidence in her presence, and (4) for which there would be predisclosed procedural rules. She also sought an injunction to prohibit the Housing Authority from evicting her or making any attempt to evict her without compliance with the requirements of due process. At the time suit was filed in the district court, plaintiff apparently made no effort to obtain a preliminary restraining order. Five days later defendants instituted a small claim action for summary ejectment in the state district court. A motion for a temporary restraining order in the United States District Court was then filed and restraint was granted on May 16, 1969. The proceeding in the state district court before a magistrate thereof was held in abeyance. When the United States District Court dismissed the complaint, plaintiff filed a notice of appeal and a motion for an injunction pending an appeal to us. Before the motion for injunction pending appeal could be acted upon, defendants pressed their action before the magistrate and obtained an order of summary eviction. Plaintiff appealed from this order to the state district court, but the appeal has not been perfected because plaintiff has been unable to post bond in an amount equivalent to one year's rent, as required by N.C.Gen.Stat. § 42–34, in order to have her appeal heard.

## II

The district court seemed uncertain of its subject matter jurisdiction over this case, but we entertain no such doubts. 28 U.S.C.A. § 1343(3) grants original jurisdiction to the district courts "[t]o redress the deprivation, under color of any State law, * * * of any right, privilege or immunity secured by the Constitution of the United States * * *." In addition, 42 U.S.C.A. § 1983 provides that "[e]very person who, under color of any statute * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights * * * secured by the Constitution * * * shall be liable to the party injured in [a] * * * suit in equity." Plaintiff's complaint alleges that the Housing Authority, a state agency, has deprived her of the hearing required by the due process clause of the fourteenth amendment. Hence, measured by these statutes, the district court had original jurisdiction.

Defendants assert that the anti-injunction statute, 28 U.S.C.A. § 2283, constitutes a bar to plaintiff's prayer for an injunction against an execution of the judgment of eviction obtained in the state court proceedings. Although the point is not fully developed in defendants' brief (and not mentioned in plaintiff's brief), the defendants contend that a state court is as competent a forum as the district court to adjudicate plaintiff's claim. Reference is made to the concluding language in *Thorpe*, "we have no reason to believe that once petitioner is told the reasons for her eviction she cannot effectively challenge their legal sufficiency in whatever eviction proceedings may be brought in the North Carolina courts." 393 U.S. at 284, 89 S.Ct. at 527. Therefore, they contend, it cannot be said that it will be necessary for the district court to enjoin state proceedings "in aid of its jurisdiction"—the only exception to the flat prohibition against staying proceedings in a state court which would appear to have any possible application.

The short answer is that the record, if any, of the summary eviction proceedings before the magistrate who granted summary eviction is not before us nor has it been tendered. We do not know if the claims asserted here were asserted there and, if so, the reasons for their rejection, whether on the ground of lack

of jurisdiction to decide them or some other reason. In passing upon this contention, we are thus confined to an examination of the North Carolina General Statutes.

N.C.Gen.Stat. § 42–26 permits summary ejectment, *inter alia,* "[w]hen a tenant in possession of real estate holds over after his term has expired." The statute would thus seem to confine the issue before the magistrate to the simple question of whether plaintiff was holding over and continuing in possession of demised premises after her term had expired. Section 42–26 also permits summary ejectment for breach of a condition of the lease and for nonpayment of rent. It is significant that the final notice of termination on which the Housing Authority proceeded before the magistrate constituted an exercise of the unlimited power of termination contained in the lease. It did not condition termination on the fact that any covenant of the lease had been breached, or that the rent had not been paid. The case is thus different from Johnson v. Tamsberg, 430 F.2d 1125 (4 Cir., 1970), where the Housing Authority of Charleston did not seek to obtain summary ejection on the basis of the exercise of an unlimited discretion to terminate the tenancy but rather undertook to prove specific acts constituting a breach of the lease and justifying termination.

We are told that plaintiff has appealed the judgment of the magistrate, but it is not disputed that the appeal has not been perfected because plaintiff is financially unable to post bond in an amount equivalent to one year's rent as required by N.C.Gen.Stat. § 42–34 in order to have her appeal heard. Even if she would be permitted to question the validity of the termination of her term at the *de novo* proceedings constituting the appeal, our examination of N.C.Gen. Stat. § 42–34 fails to disclose any provision for waiver of the bond to perfect the appeal and we have been referred to no case law, nor have we found any, which would permit waiver. Thus, on the record before us, plaintiff's right, if

any, to litigate the issues in a state court appears more theoretical than real. We conclude, therefore, that the factual basis on which to invoke the prohibition of § 2283 is lacking and the case is one in which the state proceedings may be enjoined "in aid of * * * [the district court's] jurisdiction."

### III

Other courts, in other contexts, have held that state-created, federally-funded, locally-administered housing authorities are constrained to conduct their operations within the limits of the due process clause of the fourteenth amendment. Rudder v. United States, 96 U.S.App. D.C. 329, 226 F.2d 51 (1955); Holt v. Richmond Redevelopment and Housing Authority, 266 F.Supp. 397 (E.D.Va. 1966); Thomas v. Housing Authority of City of Little Rock, 282 F.Supp. 575 (E.D.Ark.1967).

Whatever question there might have been in the application of the due process clause or the scope of the protection which it affords with regard to the eviction of tenants in public housing has been laid to rest by the decision in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg* the question was one of the application of the due process clause to the termination of welfare benefits, and particularly whether procedural due process required notice, hearing and administrative adjudication *before* benefits were terminated rather than after. In the case no substantial contention that due process was inapplicable was advanced. Nevertheless, the Court commented on why the clause was applicable, and its discussion is pertinent to the issue before us:

Appellant does not contend that procedural due process is not applicable to the termination of welfare benefits. Such benefits are a matter of statutory entitlement for persons qualified to receive them. Their termination involves state action that adjudicates important rights. The constitutional challenge cannot be answered by an

argument that public assistance benefits are "a 'privilege' and not a 'right.'" Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, or to denial of a tax exemption, or to discharge from public employment. The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in Cafeteria & Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–1749, 6 L.Ed.2d 1230, [1236] (1961), "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." (footnotes eliminated.)

*Id.* at 261–263, 90 S.Ct. at 1017–1018.

The "privilege" or the "right" to occupy publicly subsidized low-rent housing seems to us to be no less entitled to due process protection than entitlement to welfare benefits which were the subject of decision in *Goldberg* or the other rights and privileges referred to in *Goldberg*.

The program of subsidized low-cost public housing has been undertaken to serve a variety of state interests.[2] Should an eligible tenant be wrongfully evicted, some frustration of these interests will result. The impact on the tenant is no less. Not only is he, by definition, one of a class who cannot afford acceptable housing so that he is "condemned to suffer grievous loss," but should it be subsequently determined that his eviction was improper the wrong cannot be speedily made right because of the demand for low-cost public housing and the likelihood that the space from which he was evicted will be occupied by others. In short, both governmental and individual interests are furthered by affording due process in the eviction procedure.

Given the premise that the due process clause applies, *Goldberg* also defines the scope of its application. We fully agree with the Second Circuit's conclusion in Escalera v. New York City Housing Authority, 425 F.2d 853 (2 Cir.

---

2. N.C.Gen.Stat. § 157–2, which is part of the statute authorizing the creation of defendant Housing Authority, sets forth this declaration of legislative findings and purposes.

It is hereby declared that unsanitary and unsafe dwelling accommodations exist in urban and rural areas throughout the State and that such unsafe or unsanitary conditions arise from overcrowding and concentration of population, the obsolete and poor condition of the buildings, improper planning, excessive land coverage, lack of proper light, air and space, unsanitary design and arrangement, lack of proper sanitary facilities, and the existence of conditions which endanger life or property by fire and other causes; that in such urban and rural areas many persons of low income are forced to reside in unsanitary or unsafe dwelling accommodations; that in such urban and rural areas there is a lack of safe or sanitary dwelling accommodations available to all the inhabitants thereof and that consequently many persons of low income are forced to occupy overcrowded and congested dwelling accommodations; that these conditions cause an increase in and spread of disease and crime and constitute a menace to the health, safety, morals and welfare of the citizens of the State and impair economic values; that these conditions cannot be remedied by the ordinary operation of private enterprise; that the clearance, replanning and reconstruction of such areas and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired; that it is in the public interest that work on such projects be instituted as soon as possible; and that the necessity for the provisions hereinafter enacted is hereby declared as a matter of legislative determination to be in the public interest.

1970), that *Goldberg* is equally applicable to the hearing to be afforded tenants of public housing before the determination to evict them.

Succinctly stated, *Goldberg* requires (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker. We refer to *Goldberg* and *Escalera* for further elaboration of these requirements.[3]

## IV

In the light of what we have said, plaintiff manifestly has alleged a cause of action. We reverse the judgment of the district court and return the case for further proceedings consistent with this opinion. The injunction granted pending appeal shall be continued until final disposition by the district court.

Reversed and remanded.

OREN R. LEWIS, District Judge (dissenting).

If I read the majority opinion correctly, this Court now declares that the laws of North Carolina do not provide for "due process" hearings in public housing eviction cases. Specifically, they say: The plaintiff's right, if any, to litigate the issues in the state courts appears more theoretical than real.

They reached this conclusion by examining and construing the North Carolina General Statutes, § 42–26, to confine the issue before the magistrate to the simple question of whether the tenant was holding over and continuing in possession after her term had expired and because § 42–34 failed to disclose any provision for waiver of the bond requirements in an amount equal to one-year's rent to perfect an appeal.

I cannot concur because the decision is contrary to the findings of the District Court and there is no evidence in this record to support it.

The District Court found that the tenant knew why she was being evicted and that she could challenge these reasons and raise any constitutional issues in the state court proceeding. These findings are binding on this Court unless they are plainly erroneous—and no such finding was here made. See Rule 52, F.R. Civ.P.

The record discloses that the tenant—upon receipt of the notice of termination of her lease—filed suit in the United States District Court for injunctive and declaratory relief.

Her complaint sought only a declaration that she was denied due process by the termination of her lease, absent specific reasons and without a hearing at which the complainants would be required to give their testimony in her presence and be subjected to cross-examination.

The heart of her complaint was the refusal of the Housing Authority to disclose the names of the other tenants in

3. Both *Goldberg* and *Escalera* also recognize the possibility that in some instances the right to procedural due process must bend to a compelling governmental interest in summary adjudication. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). We do not foreclose this possibility here. But this case was decided on motion to dismiss, and governmental interests, if any, competing with plaintiff's apparent rights have not been developed in this record. If there are compelling competing governmental interests, they may be developed on remand and weighed by the district court, which may then decide the effect to be given them.

the project who had reported immoral acts on the part of her children, and to require their presence at the conference for cross-examination.

She made no attempt to secure a temporary restraining order to prohibit her eviction until some ten days after ejectment proceedings had been commenced in the North Carolina state courts. The state court proceedings were then held in abeyance until the United States District Court could hear the matter.

Upon dismissal by the District Judge —after reserving all questions for determination by the state courts—the Housing Authority proceeded in the magistrate's court and obtained an order of summary eviction.

We have been told this order has been appealed to the Superior Court of North Carolina—and that bond has not been posted—We have not been told what defenses, if any, were raised in the magistrate's court—and we have not been told whether the tenant has asked the Superior Court of North Carolina to waive the appeal bond requirement due to her indigency.

We do know, however, from the record in this case that the defendants agreed that the tenant could deposit the monthly rent in escrow, in lieu of bond, during the pendency of the state action, and that this was in fact done.

Although the records of the state court proceeding are not before us—we do know that the tenant in this case was told the reasons for her eviction—her attorney admits she was—and the District Court found she was.

Former Chief Justice Warren said in Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969):

"* * * We have no reason to believe that once petitioner is told the reasons for her eviction she cannot effectively challenge their legal sufficiency in whatever eviction proceedings may be brought in the North Carolina courts. * * *"

Justice White, dissenting in the same case heard in 1967 (386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394), said the tenant had the opportunity (in the lower court) to explain fully why she was evicted.

Judge Gordon, in his memorandum opinion in this case, was equally positive when he stated

"If a state judge found that the Housing Authority has not complied with Thorpe it is unthinkable that he would allow summary ejectment—and if he found that the Housing Authority had violated due process of law it is equally unthinkable that he would allow summary ejectment."

The majority say—even if she [tenant] would be permitted to question the validity of the termination of her term at the de novo proceeding—she has been denied that right here—because she was unable to post the required appeal bond and the North Carolina statutes do not permit waiver.

What the North Carolina court would have done in this case we do not know— We do not even know whether the tenant asked for a waiver. State courts in this circuit have in the past waived statutory requirements for appeal, and this Court should not speculate what North Carolina would have done in this case.

The Supreme Court of the United States refused to speculate in a similar situation—because of an ambiguity in the record of a Connecticut proceeding concerning the underlying reason appellants were denied an opportunity to appeal. See Simmons v. West Haven Housing Authority, 399 U.S. 510, 90 S.Ct. 1960, 26 L.Ed.2d 764 (1970).

The Supreme Court—in Simmons— has refused to decide whether the Connecticut General Statutes requiring a bond for the protection of his landlord from a tenant who wished to appeal from a judgment in a summary eviction proceeding, offend either the due process or equal protection clauses of the Fourteenth Amendment if applied to foreclose appellate review for those too poor to post bond.

We should likewise refuse to decide that question in this case.

State courts are the sole tribunal having jurisdiction to hear and determine eviction suits. They are duty bound to follow the Constitution of the United States and the decisions of the Supreme Court of the United States—and I have no reason to doubt that the North Carolina courts would not have so done here had they been given the opportunity.

Assuming that the Housing Authority has now obtained a final judgment in the North Carolina courts and has in fact evicted the tenant from the demised premises—which, of course, is not disclosed by the record in this case—I still am of the opinion that the District Court lacked authority to enjoin the North Carolina proceeding for the reasons more succinctly stated by Justice Black in the Atlantic Coast case [Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers], 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970):

> "* * * a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy * * *. Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be *'necessary in aid of'* that jurisdiction. * * * [L]ower federal courts possess no power whatever to sit in direct review of state court decisions. * * * Unlike the Federal District Court, this Court does have potential appellate jurisdiction over federal questions raised in state court proceedings, and that broader jurisdiction allows this Court correspondingly broader au-

> thority to issue injunctions 'necessary in aid of its jurisdiction.'"

On the premise that the due process clause applies, the majority here rule that Goldberg [1] is equally applicable to the hearing to be afforded tenants of public housing before the termination to evict them.

My quarrel is not whether the due process clause applies in the eviction procedure—it clearly does. What troubles me is equating the termination of welfare benefits, as described in Goldberg, with the constitutional requirements necessary to the determination of a housing authority lease and the subsequent eviction of the tenant.

There is a substantial differenece between these two types of cases. In the welfare case benefits were terminated by certain review officials—The recipient then had to request a post-termination "fair" hearing before an independent state hearing officer. The pre-notice conference in this case does not evict the tenant—a full judicial hearing is required before she can be evicted.

Justice Brennan, in Goldberg, held the welfare recipient must be afforded an evidentiary hearing before termination of benefits—In so doing, in footnote 14 on page 267, on page 1020 of 90 S.Ct., he pointed out—

> Due process does not, of course, require two hearings. If, for example, a State simply wishes to continue benefits [here, possession] until after a "fair" hearing there will be no need for a preliminary hearing.

Justice Douglas took substantially the same position in his concurring opinion in Thorpe when he questioned whether there was a constitutional requirement for an administrative hearing in the case where a tenant can have a full judicial hearing when the Housing Authority attempts to evict him.

Judge Sobeloff took the same position in Johnson v. Tamsberg, 430 F.2d 1125, decided by another panel of this Court on July 31, 1970.

1. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The majority get around Johnson by concluding the Housing Authority in this case proceeded before the magistrate on the basis of the final notice of termination [of the lease]. This has to be an assumption—because the record of what took place before the magistrate was not before us.

Notwithstanding the abhorrence of faceless informers—I do not agree that the Housing Authority should be required to give the tenant the names of all the neighbors who filed complaints of misconduct against her—That would create and only intensify neighborhood quarrels and dignify them by converting them into constitutional controversies.

Neither can I agree that this case should be retained and determined by the District Court. Because the plaintiff's attorney thought he could present the issues he was interested in more clearly in the federal court—is not persuasive.

For these reasons I must respectfully note my dissent.