June McMICHAEL

v.

CHESTER HOUSING AUTHORITY and Howard J. Gallagher, individually and as Executive Director and William R. Hall, individually and as Manager of McCaffrey Village Project.

Civ. A. No. 70–589.

United States District Court,
E. D. Pennsylvania.

April 8, 1971.

Richard S. Packel, Chester, Pa., for plaintiff.

Francis G. Pileggi, Chester, Pa., for defendants.

OPINION AND ORDER

FULLAM, District Judge.

In March 1969 plaintiff entered into a lease with the Chester Housing Authority for the rental of a unit at the McCaffrey Village Project, Chester, Pennsylvania. Chester Housing Authority is a housing authority established under the Pennsylvania Housing Authorities Law, 35 Pa.Stat.Ann. § 1541 et seq. to construct, own and operate federally assisted low-rent housing pursuant to 42 U.S. C. § 1401 et seq. The lease provides for a monthly term with automatic renewal for successive terms. The Authority can terminate the lease at the expiration of any monthly term by giving the tenant thirty days notice of its intention to do so. If the lease is so terminated, and

the tenant does not deliver up possession of the premises, the Authority can, according to the lease, bring an amicable action of ejectment and confess judgment against the tenant in any competent court for recovery of the premises.

Soon after plaintiff moved into McCaffrey Village, complaints began to be made by tenants in neighboring units to Mr. Hall, the manager of McCaffrey Village, relating to noise emanating from plaintiff's unit. A case worker in tenant relations employed by the Chester Housing Authority, a Mrs. McFadden, conducted an investigation of the complaints and kept a file relating to the investigation. Mr. Hall and Mrs. McFadden on several occasions met with plaintiff and told her of the complaints, advising her that excessive noise would have to be stopped or her lease might be terminated. Plaintiff repeatedly denied that she made excessive noise. On January 13, 1970, another such meeting was held. Mr. Hall also wrote plaintiff on that date informing her that complaints concerning noise were still being received, and that the next letter would be a termination notice. At that meeting he also informed her that her housekeeping was below standard. On or about January 21, 1970, Mr. Hall, Mrs. McFadden, and another social worker met with plaintiff, repeated the same complaints and the names of the complaining tenants. Plaintiff again denied the charges, but Mr. Hall informed her that she would be evicted. Mr. Hall had informed plaintiff several hours before this meeting that he would be around to see her. Plaintiff received a written notice of termination, dated January 21, 1970, several days later.

On February 24, 1970, a meeting was held, attended by plaintiff and several of her neighbors. Mrs. McFadden, a member of the Board of Commissioners of the Chester Housing Authority, and its director of tenant relations also attended. Mr. Hall was present for a brief part of the meeting. Plaintiff had been told of this meeting several days in advance by Mrs. McFadden, and was told it might help straighten out the problems that seemed to exist. At the meeting, the neighbors voiced their complaints. No new notice of termination was sent to plaintiff after this meeting. On February 27, 1970, it appearing that eviction of plaintiff was imminent, this Court temporarily restrained defendants from evicting her, which restraining order was later enlarged into a preliminary injunction.

In Count I of the complaint, plaintiff contends that the procedures surrounding the termination of plaintiff's lease did not comport with the provisions of the HUD circular to public housing authorities dated February 7, 1967 and made mandatory by the Supreme Court in Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). In Count II she contends that she has been, or is threatened with being, deprived of her rights without due process of law. Defendants have contended that this Court should not pass on the issues raised but should abstain and remit plaintiff to remedies in the state courts. Plaintiff has requested a declaratory judgment and injunctive relief.

■ Although the complaint primarily asserts a deprivation of property rights, since the housing of a person who is not in a position to obtain alternate living quarters is threatened, this Court has jurisdiction under 28 U.S.C. § 1343 to assess the constitutional adequacy of the procedures involved. Escalera v. New York City Housing Authority, 425 F.2d 853 (2nd Cir. 1970). And since the question of the adequacy of the procedures in constitutional terms is at issue, the adequacy of the procedures under the HUD circular is a pendent issue and may also be considered.

■ The Court of Appeals for the Second and Fourth Circuits have recently held that the Constitution requires that the same type of hearing be afforded tenants in public housing projects prior to their eviction as that required by the Supreme Court in Goldberg v. Kelly, 397

U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) before welfare benefits are terminated. Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970) cert. denied 39 U.S.L.W. 3421 (1970); Escalera v. New York City Housing Authority, *supra*. These decisions can be read to mean that such a hearing must be held before the notice of termination of the lease, but their facts and reliance on *Goldberg* make it clear that they require that a hearing must be held before the final decision to evict the tenant is made. The elements of such a hearing are: adequate notice detailing the reasons for a proposed eviction; an opportunity to confront adverse witnesses and present a defense; the right to have the assistance of an attorney or other counsel; and an impartial decision-maker whose decision rests solely on the legal rules and evidence adduced at the hearing and who states the reasons for the decision.

An assessment of the procedural rights already afforded plaintiff must take into account the rights afforded her under Pennsylvania law. (Now embodied in Rules of Civil Procedure for Justices of the Peace, 501 et seq.) In Randell v. Newark Housing Authority, 384 F.2d 151 (3rd Cir. 1967); cert. denied sub nom. Avent v. Newark Housing Authority, 393 U.S. 870, 89 S.Ct. 158, 21 L.Ed.2d 139 (1968), the Court indicated that the New Jersey statutory scheme for enforcement of evictions appeared to guarantee due process; it was held that the federal court should abstain while state remedies were pursued. The denial of a preliminary injunction was affirmed. In both *Caulder* and *Escalera*, the courts found that no effective pre-eviction state court hearing was available.

In the present case, an effective pre-eviction hearing in the state courts may be foreclosed by the provision in the lease permitting an amicable ejectment by confession of judgment. If this provision is applied, the tenant may be dispossessed of her dwelling before a hearing has been held. In light of Goldberg v. Kelly, *supra*, such a procedure does not effectively protect the constitutional rights of plaintiff. However, the practice of confession of judgments against low-income persons as applied to leases in Pennsylvania has been declared unconstitutional by a three-judge District Court for the Eastern District of Pennsylvania. Swarb v. Lennox, 314 F.Supp. 1091 (E.D. Pa.1970); appeal filed No. 538 August 14, 1970. While the final order in that case restrains only the officials of Philadelphia County from processing and enforcing such judgments, I cannot assume that the courts of Delaware County would be likely to follow a practice which has been declared unconstitutional.

Plaintiff also contends that even without a confession of judgment the procedures available are inadequate. However, the rules of practice applicable, in conjunction with the procedures required by the HUD circular, do provide for notice and a hearing consistent with the *Goldberg* model. In addition the case of Lancaster Housing Authority v. Gardner, 434 Pa. 467, 255 A.2d 539 (1969) makes rather clear that a tenant in public housing in Pennsylvania may not be evicted without proof of legally sufficient reasons.

In view of the fact that Pennsylvania laws and procedures now probably secure plaintiff's rights with regard to a fair hearing prior to eviction, it is appropriate to abstain from entering any judgment with respect to this issue at this time. *See* Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

The remaining question is whether the HUD requirements set forth in *Thorpe* were adequately followed prior to the notice of termination and whether the Constitution requires any other procedures. The HUD circular applied in *Thorpe* states:

" * * * [I]t is essential that no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish."

**150**

Although a notice of termination does not in and of itself affect the tenant's immediate right to possession of her premises, it is an event of importance which alters the landlord-tenant relationship and places the tenant in a position of uncertainty. Therefore, the procedures used in reaching a decision to send such notice must be more formal than occurred in this case. A proper interpretation of *Thorpe* and the HUD circular compels this conclusion.

 The basic problem here is that it is not clear who made the decision to terminate plaintiff's lease. Plaintiff must have this information in order to make an effective response to the charges. Also, to make the ability to respond to charges effective, notice of the specific complaints against her must be given in advance of the occasion for her explanation. These steps must be taken before an effective notice of termination may be rendered.

An appropriate order will therefore be entered, in the form of a declaratory judgment and final injunction.