## Bucks County Housing Authority
## v. Santiago

*Thomas J. Profy, III*, for plaintiff.
*J. Michael Ruttle*, for defendant.

MIMS, *J.*, August 13, 1980—Plaintiff, the Bucks County Housing Authority (hereinafter, the Housing Authority), is a public corporation created

under the Housing Authorities Law of May 28, 1937, P.L. 955, sec. 1 et seq., 35 P.S. §1541 et seq. Defendant, Mrs. Sophia Santiago, is an adult individual residing at 311 Otter Street, Bristol Borough, Bucks County, Pa.

On December 1, 1977 the Bucks County Redevelopment Authority (hereinafter, the Redevelopment Authority) owned the premises at 311 Otter Street, Bristol. On December 1, 1977 the Redevelopment Authority and Mrs. Santiago executed a lease agreement (hereinafter, the lease) by which the Redevelopment Authority leased the premises at 311 Otter Street to Mrs. Santiago for the term of one year. On December 14, 1977 the Redevelopment Authority and the Housing Authority executed a "Housing Assistance Payments Contract" effective December 1, 1977. By this contract, the Housing Authority agreed to make federally subsidized housing assistance payments to the Redevelopment Authority in payment of a portion of the rental value of 311 Otter Street and the Redevelopment Authority agreed to abide by certain conditions required by the United States Department of Housing and Urban Development (hereinafter, HUD).[1]

_____

1. The contract between the Housing Authority and the Redevelopment Authority was pursuant to an "Annual Contributions Contract," a written agreement between the Housing Authority and HUD whereby HUD agreed to provide annual contributions to the Housing Authority to cover housing assistance payments and other expenses pursuant to the United States Housing Act of September 1, 1937, 88 Stat. 653, as amended, 42 U.S.C.A. §1437 et seq. The United States Housing Act, as amended, 42 U.S.C.A. §§1437c and 1437d, grants authority to the Secretary of Housing and Urban Development to promulgate regulations to govern the management and operations of public housing agencies such as plaintiff Housing Agency.

On or about March 25, 1978 one of Mrs. Santiago's sons, who resided at 311 Otter Street, was arrested and charged with the illegal sale of alcoholic beverages on the premises at 311 Otter Street. Mrs. Santiago's son admitted to the sale, and the criminal charges relating to this sale were disposed of through the district attorney's accelerated rehabilitative disposition program. As a result of this incident and other complaints from neighbors concerning the alleged operation of a "speakeasy" at 311 Otter Street, on April 26, 1978 the Redevelopment Authority delivered a notice dated April 25, 1978 to Mrs. Santiago directing her to vacate the premises for breach of the conditions of the lease.

On April 28, 1978 the Redevelopment Authority transferred title to the premises at 311 Otter Street to the Housing Authority, and assigned its lease with Mrs. Santiago to the Housing Authority. As a result of the aforementioned incident on March 25, 1978 involving the illegal sale of alcoholic beverages on the premises, numerous complaints by neighbors concerning the operation of an alleged speakeasy on the premises, and other complaints concerning the maintenance of the premises, the Housing Authority brought two eviction actions against Mrs. Santiago before a district justice. Both of these actions resulted in judgments in favor of the Housing Authority and both have been appealed to this court. These two appeals (Civil Action No. 78-6813 and No. 79-13661) were consolidated by stipulation.

Both appeals challenge, inter alia, the procedural propriety of the Housing Authority's efforts to evict Mrs. Santiago, particularly the Housing Authority's compliance with certain procedural requirements mandated by HUD. The pertinent regula-

tions promulgated by the Secretary of Housing and Urban Development require certain mandatory provisions in every lease executed by a recipient of housing assistance payments, and certain mandatory procedures in lease terminations and evictions.

Among the required lease provisions is the following provision concerning eviction:[2]

"e. The Lessor shall not evict the Lessee unless the Lessor complies with the requirements of local law, if any, and of this provision. The Lessor shall give the Lessee a written notice of the proposed eviction, stating the grounds and advising the Lessee that he has 10 days (or such greater number, if any, that may be required by local law) within which to respond to the Lessor. Because the Lessor must obtain the PHA's [Public Housing Authority (in this case, the Bucks County Housing Authority)] authorization for an eviction, a copy of the notice shall be furnished simultaneously to the PHA, and the notice shall also state that the Lessee may, within the same time period, present his objections to the PHA in writing or in person. The PHA shall forthwith examine the grounds for eviction and shall authorize the eviction unless it finds the grounds to be insufficient under the lease. The PHA shall notify the Lessor and the Lessee of its determination within 20 days of the date of the notice to the Lessee, whether or not the Lessee has presented objections to the PHA. If the Lessor has not received a response from the PHA within 20 days, he shall telephone the PHA and shall be informed by the PHA whether a notice of determination has been mailed. If the PHA informs the Lessor

2. 24 C.F.R. §882 Appendix I.

that no notice has been mailed within the 20 day period, the PHA shall be deemed to have authorized the eviction."

The foregoing required lease provision was incorporated verbatim into an "Addendum To Lease" executed on November 3, 1977 by Warren P. Phelan, Executive Director, on behalf of the Redevelopment Authority as lessor, and by Mrs. Santiago as lessee.

The Redevelopment Authority's notice to vacate, dated April 25, 1978 and delivered to Mrs. Santiago on April 26, 1978, reads as follows:

"Re: 311 Otter Street
      Bristol, Pennsylvania

Dear Mrs. Santiago:

Pursuant to the Landlord-Tenant Act of 1951 as amended, 68 Purdons Statute 250.501, you are hereby notified to remove yourself and your family and possessions from the above property within 30 days from the receipt of this notice.

This notice to remove is given to you due to the fact that you breached the conditions of your lease with the Redevelopment Authority Of The County of Bucks, specifically, by allowing criminal activities to occur on your premises by you or a member of your family and by threatening the health, safety, and welfare of your neighbors.

This conduct is a violation of Section 13(d) and 8(c) of your lease.

If you fail to remove yourself within 30 days, action will be taken to have you removed by the Court.

> Very truly yours,
> EUGENE E. KELLIS
> Solicitor
> Redevelopment Authority
> Of The County Of Bucks"

It is readily apparent that the foregoing notice does not comply with the required lease provision. Rather than being a notice of a proposed eviction, it is a notice to vacate. It does not advise "the Lessee that he has 10 days (or such greater number, if any, that may be required by local law) within which to respond to the Lessor." Nor does it state, "that the Lessee may within the same time period present his objections to the PHA in writing or in person." Because the record before us in No. 78-6813 contains no notice which complies with the HUD mandated lease provision, the appeal in that case must be sustained and the judgment of the district justice reversed.

After the Housing Authority took title to the premises at 311 Otter Street on April 28, 1980, another set of procedural requirements became applicable to any attempt by the Housing Authority to evict Mrs. Santiago. As stated in Staten v. Housing Authority of the City of Pittsburgh, 469 F. Supp. 1013, 1015 (W.D. Pa. 1979):

"The procedure for lease termination used by a public housing association must meet certain constitutional requirements as set forth in Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1969). Although the issue in Goldberg was termination of welfare benefits, the procedure outlined by the court as being constitutionally mandated has been applied to the termination of a tenant's lease by a federally funded state housing association. Caulder v. Durham Housing Authority, 433 F. 2d 998 (4th Cir. 1970); Escalera v. New York City Housing Authority, 425 F. 2d 853 (2nd Cir. 1970); McMichael v. Chester Housing Authority, 325 F. Supp. 147 (E.D. Pa. 1971)."

The requirements stated in Caulder, supra, are incorporated in the HUD regulations applicable to federally subsidized public housing agencies (such as plaintiff Housing Authority) in 24 C.F.R. §§866.50-866.59, entitled Grievance Procedures and Requirements.

In an apparent attempt to comply with these regulations (after it had received notice of Mrs. Santiago's appeal, No. 78-6813, from the decision of the district justice) the Housing Authority served Mrs. Santiago with a notice which reads:

"REASONS FOR EVICTION

The Bucks County Housing Authority, your landlord, has elected to terminate your lease and evict you from the property known as 311 Otter Street, Bristol, Bucks County, Pennsylvania, for the following reasons:

1. Violating terms and conditions of lease by conducting and allowing illegal and improper activities on the premises.

2. Dispensing alcoholic and malt beverages in violation of the Pennsylvania Liquor Control Act.

Pursuant to the Grievance Procedure, you have the right to request a hearing upon the proposed eviction within five (5) working days of the date of this conference."

Mrs. Santiago requested a hearing, and one was scheduled for September 21, 1978. This hearing was held as scheduled before a Ms. Robinson, an arbitrator elected by the tenants of the Housing Authority and appointed by the Housing Authority as the hearing officer in the Santiago matter. After the hearing, Ms. Robinson failed to render a decision despite numerous requests from the Executive Director of the Housing Authority. To this date, no

decision has been rendered by the hearing officer. Although either party could have caused a written transcript of the hearing to be made,[3] none was requested, and none was made.

On December 11, 1978 the Board of Commissioners of the Housing Authority adopted a Resolution (Number 560) which reads in pertinent part as follows:

"WHEREAS, the grievance procedure of the Bucks County Housing Authority provides that the Authority shall promptly take all action necessary to carry out the decision reached by the arbitrator or refrain from any action prohibited by such decision unless the Board of Commissioners of the Authority determines and notifies the other party to the proceeding in writing within thirty (30) days that a decision was reached arbitrarily or exceeded the authority of the arbitrator; and,

WHEREAS, Roz Robinson, the arbitrator in the matter of the Bucks County Housing Authority vs. Sophia Santiago eviction has failed to render a decision within a reasonable time after the hearing and said inaction may be construed as a decision in favor of Sophia Santiago.

NOW, THEREFORE, be it resolved by the Bucks County Housing Authority and it is hereby resolved as follows:

1. Failure of the arbitrator to render a decision in the matter of the Bucks County Housing Authority vs. Sophia Santiago was arbitrary and exceeded the authority of the arbitrator in such proceedings.

2. The Chairman and Secretary of the Authority are hereby authorized and directed to proceed with

---

3. 24 C.F.R. §866.56(g).

the eviction of Sophia Santiago and to institute such judicial proceedings to effect such eviction.

RESOLUTION ADOPTED THIS—11th—day of December 1978"

After adopting Resolution No. 560 the Housing Authority commenced its second eviction action before the district justice and received a judgment in its favor on October 30, 1979. A timely appeal, No. 79-13661, was taken from that judgment, challenging, inter alia, the Housing Authority's compliance with the federally mandated procedural requirements of 24 C.F.R. §§866.50-866.59.

Specifically, Mrs. Santiago challenges the procedural propriety of the Housing Authority's commencement of an eviction action against her in the absence of a decision by the hearing officer.[4] The Housing Authority contends that its commencement of an eviction action after its adoption of Reso-

---

4. The regulation, 24 C.F.R. §866.58, entitled PHA [Public Housing Authority] Eviction Actions states: "If a tenant has requested a hearing in accordance with §866.55 on a complaint involving a PHA notice of termination of the tenancy *and the hearing officer or hearing panel upholds the PHA's action to terminate the tenancy*, the PHA shall not commence an eviction action in a State or local court until it has served a notice to vacate on the tenant, *and in no event shall the notice to vacate be issued prior to the decision of the hearing officer or the hearing panel having been mailed or delivered to the complainant.* Such notice to vacate must be in writing and specify that if the tenant fails to quit the premises within the applicable statutory period, or on the termination date stated in the notice of termination, whichever is later, appropriate action will be brought against him and he may be required to pay court costs and attorney fees." (Emphasis supplied.)

lution No. 560 is authorized by the HUD regulations governing grievance procedures.[5]

We are not persuaded by the Housing Authority's argument that it can: (1) treat the failure of the arbitrator to render a decision as a deemed decision in favor of Mrs. Santiago; then, (2) find that decision to be arbitrary and in excess of the arbitrator's authority; and (3) authorize its chairman and secretary to commence judicial proceedings to effect an eviction.

The HUD regulations do not specifically address the failure of a hearing officer to render a decision. However, the HUD regulations which set forth the

---

5. As authority for this contention the Housing Authority cites 24 C.F.R. §866.57, particularly §866.57(b)(2):

"§866.57 Decision of the hearing officer or hearing panel. (a) The hearing officer or hearing panel shall prepare a written decision, together with the reasons therefor, within a reasonable time after the hearing. A copy of the decision shall be sent to the complainant and the PHA. The PHA shall retain a copy of the decision in the tenant's folder. A copy of such decision, with all names and identifying references deleted, shall also be maintained on file by the PHA and made available for inspection by a prospective complainant, his representative, or the hearing panel or hearing officer. (b) *The decision of the hearing officer or hearing panel shall be binding on the PHA* which shall take all actions, or refrain from any actions, necessary to carry out the decision *unless the PHA Board of Commissioners determines* within a reasonable time, and promptly notifies the complainant of its determination, *that* (1) The grievance does not concern PHA action or failure to act in accordance with or involving the complainant's lease on PHA regulations, which adversely affect the complainant's rights, duties, welfare or status; (2) *The decision of the hearing officer or hearing panel is contrary to applicable Federal, State or local law, HUD regulations or requirements of the annual contributions contract between HUD and the PHA.*" (Emphasis supplied.)

grievance procedures and requirements[6] and prescribe the procedures governing a hearing after a tenant has requested one[7] provide some guidance as to how the Housing Authority should proceed in such a situation. That guidance is that certain elements of due process must be provided to the tenant who has requested a hearing *before* the Housing Authority makes any determination to evict the tenant. Those elements of due process must include:

"(1) [T]imely and adequate notice detailing the reasons for a *proposed* termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a

---

6. 24 C.F.R. §§866.50 - 866.59.

7. The regulation, 24 C.F.R. §866.56, entitled Procedures governing the hearing provides:

"(a) The hearing shall be held before a hearing officer or hearing panel, as appropriate. (b) The complainant shall be afforded a fair hearing providing the basic safeguards of due process which shall include: (1) The opportunity to examine before the hearing and, at the expense of the complainant, to copy all documents, records and regulations of the PHA that are relevant to the hearing. Any document not so made available after request therefor by the complainant may not be relied on by the PHA at the hearing.

"(2) The right to be represented by counsel or other person chosen as his or her representative;

"(3) The right to a private hearing unless the complainant requests a public hearing;

"(4) The right to present evidence and arguments in support of his or her complaint, to controvert evidence relied on by the PHA or project management, and to confront and cross-examine all witnesses on whose testimony or information the PHA or project management relies; and

"(5) A decision based solely and exclusively upon the facts presented at the hearing."

tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker." Caulder v. Durham Housing Authority, 433 F. 2d 998, 1004 (4th Cir. 1970).

The procedure followed by the Housing Authority in this case failed to provide required elements of due process. There is no evidence in the record that Mrs. Santiago received any notice of the meeting of the Board of Commissioners of the Housing Authority held on December 11, 1978 at which the determination to evict her was made and Resolution No. 560 was adopted. Nor is there any evidence that she or her representative were present and afforded any opportunity to be heard at that meeting. The determination to evict Mrs. Santiago contained in Resolution No. 560 contains no statement of the facts (other than the failure of the hearing officer to render a decision) presented (either at the December 11, 1978 meeting of the Board of Commissioners of the Housing Authority or the grievance hearing held before Ms. Robinson on September 21, 1978 upon which the determination to evict was based. Additionally, it appears that the Housing Authority's Board of Commissioners is not the sort of impartial decision maker envisioned in the procedural scheme of 24 C.F.R. §§866.50-866.59 for the initial determination of whether the Housing Authority should evict a tenant.[8] Because we find that the

8. The regulation, 24 C.F.R. §866.53, contains the following definitions:

"(d) 'Hearing officer' shall mean a person selected in ac-

Housing Authority's decision to commence eviction proceedings against Mrs. Santiago was not preceded by the procedures required by the HUD regulations and Caulder decision, we must sustain the appeal in No. 79-13661 and reverse the judgment of the district justice.

We appreciate the frustration that our decision will cause the residents of the neighborhood in which 311 Otter Street is located. The evidence received at the hearing on these appeals reveals a course of conduct by the occupants of 311 Otter Street which would disturb even the most tolerant

cordance with §866.55 of this Subpart to hear grievances and render a decision with respect thereto. (e) 'Hearing panel' shall mean a panel selected in accordance with §866.55 of this Subpart to hear grievances and render a decision with respect thereto."

The procedures for selection of a hearing officer or hearing panel are described in 24 C.F.R. §866.55 as follows:

"(b) Selection of Hearing Officer or Hearing Panel. Grievances shall be presented before a hearing officer or hearing panel. A hearing officer or hearing panel shall be selected as follows: (1) The hearing officer shall be an *impartial, disinterested person* selected jointly by the PHA and the complainant. If the PHA and the complainant cannot agree on a hearing officer, they shall each appoint a member of a hearing panel and the members so appointed shall select a third member. If the members appointed by the PHA and the complainant cannot agree on a third member, such member shall be appointed by an independent arbitration organization such as the Center for Disputes Settlement of the American Arbitration Association, or by any other third party agreed upon by the PHA and the complainant. (2) In lieu of the procedure set forth in paragraph (b) of this section a PHA may provide for the appointment of hearing officer or hearing panels by any method which is approved by the majority of tenants (in any building, group of buildings, or project, or group of projects to which the methods are applicable) voting in an election or meeting of tenants held for the purpose." (Emphasis supplied.)

of neighbors. The fact that our decision does not eliminate that conduct frustrates us also. Even considering the failure of the hearing officer to render a decision, we can find no reason why the Housing Authority should take more than two years to go from the Liquor Control Board's raid on March 25, 1978 to today's inconclusive result. The HUD mandated grievance procedures are not unduly complicated. Had those procedures been initiated promptly and pursued properly and thoroughly, it is likely that the situation which the neighbors of the occupants of 311 Otter Street found objectionable would have been resolved to their satisfaction some time ago.

Our decision does not condone the conduct of the occupants of 311 Otter Street, nor does it ignore the Housing Authority's legitimate interest in evicting those who violate the minimum standards required of occupants of public housing. We hold only that "every public tenant, however disorderly, evil, or malevolent, is entitled to due process before he is evicted." Ruffin v. Housing Authority of New Orleans, 301 F. Supp. 251, 254 (E.D. La. 1969). The Housing Authority must comply with HUD regulations and its own grievance procedure. Until it does so, Mrs. Santiago is entitled to continue her tenancy. For the foregoing reasons, we enter the following

### ORDER

And now, August 13, 1980, it is hereby ordered, directed and decreed that the appeals in Civil Actions Nos. 78-6813 and 79-13661 are sustained and the judgments of the district justice in each case are reversed.

Judge Kelton did not participate in this opinion.