**WILSON CLINIC & HOSPITAL, INC., Appellee,**

v.

**BLUE CROSS OF SOUTH CAROLINA et al., Appellants.**

**No. 73–1148.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1973.

Decided March 14, 1974.

Boreman, Senior Circuit Judge, dissented and filed opinion.

Jean A. Staudt, Atty., U. S. Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., of South Carolina, John K. Grisso, U. S. Atty., Kathryn H. Baldwin, Atty., U. S. Dept. of Justice, on brief), for appellants.

Benny R. Greer, Darlington, S. C. (Greer & Chandler, Darlington, S. C., on brief), for appellee.

Before BOREMAN and BRYAN, Senior Circuit Judges, and WINTER, Circuit Judge.

BRYAN, Senior Circuit Judge:

The Medicare program, administered by the Secretary of Health, Education and Welfare, under the Insurance for the Aged Act, 42 U.S.C. § 1395 et seq., provides, so far as imported into this case, for reimbursement of a hospital for services furnished to persons of 65 years and upwards. Id. § 1395, Parts A and C. Hospital cost reports are submitted and accounts settled periodically. Id. § 1395g. Upon this appeal, the question is whether in the instances here there was an evidentiary hearing before the Secretary withheld the amount of alleged overpayments from later accruals, and if not, was such recoupment illegal as a deprivation of Fifth Amendment due process.

On the allegation of want of due process, appellee-hospital here obtained an injunction from the District Court disallowing this adjustment. The Secretary's intermediary appeals.

We think the Secretary is altogether innocent of the charge, for the fact is that his action did in truth and practicality give the hospital generous opportunity for, and accorded it, a full hearing on the amount, if any, owing in reimbursement. Indeed, more was given than due process required.

Under the program the hospital is known as the "provider of services". Id. § 1395x(u). At agreeable times, the provider's 12-month costs are laid before the Secretary or his intermediary. An intermediary is a representative of the Secretary, appointed on the mutual se-

lection of the latter and the provider. Id. § 1395h. Its function is to verify the amounts earned by the provider for services. In this instance the provider is the appellee Wilson Clinic & Hospital, and appellant Blue Cross of South Carolina is the intermediary.

The claim in suit is Blue Cross' demand for recovery of overpayments it contends were made to Clinic during 1966–69. Initial audits showed Clinic entitled to $31,000 more than the costs it had reported, and documents accepting these figures as final had been executed between Blue Cross and Clinic.

Accountings for 1970 and 1971 reflected excesses paid to Clinic of $16,303 and $4,232, respectively. Prompted by these results, 1966–69 statements were again reviewed; they disclosed Clinic as over-refunded by $25,551.00. Notice was given Clinic on September 22, 1972 of the intermediary's intention to suspend future reimbursements until the overages were recouped.

Clinic had filed the instant suit on September 20, 1972 to confirm the accounts as agreed for the years 1966–69 and to restrain the intermediary from any withholding of funds. The cause was heard on Blue Cross' motion to dismiss, supported by the unrefuted affidavit of Blue Cross' General Manager to the facts just related.

The District Court granted the injunction and also directed restoration to Clinic of the sums earlier retained. The Court was of opinion that while Blue Cross could reopen the agreements[1], it could not withhold indemnification from Clinic without first affording it an evidentiary hearing on the right of the suspension.

I. Reopenings are contemplated generally by the Act. To begin with, it impliedly, if not expressly, envisages the canvassing of all payments to a provider.

See: Id. § 1395g; § 1395f(b); § 1395h (a)(2)(B). Obviously, this tutelage embraces the power and duty to reopen settlements.

Moreover, the Secretary is instructed to issue regulations for the making of "suitable retroactive corrective adjustments" whenever the indemnity of the provider appears "inadequate or excessive". Id. § 1395x(v)(1)(A)(ii). He did so in a regulation effective May 27, 1972, 20 CFR 405.499g[2], expressly permitting the intermediary to reopen a determination of the amount of a program reimbursement. Thus the intent of Congress to endow the Secretary with ample reopening powers is quite evident.

Indisputably, the United States can always retrieve moneys misunderstandingly outlaid. Even aside from the Act now in suit, the District Court was quite sound in declaring that, agreements non obstante, sums mistakenly paid to Clinic could be recaptured. It is underwritten by United States v. Wurts, 303 U.S. 414, 415–416, 58 S.Ct. 637, 82 L.Ed. 932 (1938) and Wisconsin Central Railroad Co. v. United States, 164 U.S. 190, 212, 17 S.Ct. 45, 41 L.Ed. 399 (1896). The corollary is included: that the Government may offset overpayments against current or subsequent obligations. Gratiot v. United States, 15 Pet. (40 U.S.) 336, 10 L.Ed. 759 (1841).

II. However, the District Court erred in vitiating, on the ground that there was no prior evidentiary hearing on the redeterminations, Blue Cross' threat of withholdings. Decision was rested on Coral Gables Convalescent Home, Inc. v. Richardson, 340 F.Supp. 646 (SDFla. 1972). There no hearing whatsoever was obtainable and the intermediary's computation was absolute. For that reason alone Coral Gables sustained the provider's right to attack at once in court the intermediary's reckoning.

---

1. In their brief appellees suggest that this is not an issue. However, the District Court ruled upon it; the appellant argues it; and the appellees intimate that the point may later have to be decided. In this posture of the record, we think the issue should be resolved.

2. For the issuance of regulations generally, see infra § II, par. 2.

Apparently to avoid the vulnerability in *Coral Gables*, the Secretary on May 27, 1972 disseminated overall regulations. 42 U.S.C. §§ 1395hh and 1395x(v)(1)(A). Inasmuch as the reopenings were put into effect (May 3, 1972) before the effectuation of the new regulations on May 27, 1972, they did not control the reopenings here.[3] However, in respect to the redeterminations themselves, the new promulgations were applicable. They outline, as will appear immediately, the steps to be pursued in ascertaining the sums owing the provider.

Regulation 405.491 requires that, after receiving the provider's cost report and analyzing it, the intermediary notify the provider of any reimbursements due. This figure is declared to be the basis for any corrective action, including the suspension of further payments. Contemporaneously, the provider is informed of its right to a hearing on the determination, regulation 405.492 allowing the provider to request a hearing if dissatisfied with the intermediary's tally. Subsequent regulations spell out the procedure for the hearing and for the review of the intermediary's conclusions by disinterested but knowledgeable hearing officers. 405.492 to 405.499i.

 Instantly, the historic events demonstrate that, at the time the injunction issued, Clinic was not aggrieved by lack of a single syllable of due process. As noted previously, Clinic had been tendered and enjoyed every demand of due process as to notice and related incidents precedent to the determination of reimbursement.[4] These events without contradiction, were enumerated in the affidavit filed with the motion to dismiss and considered by the Court without objection. The affiant's narrative follows:

"On June 6, 1972, a conference was held at Wilson Clinic where the proposed adjustments by Provider Reimbursement were explained to Wilson Clinic. A copy of the adjustment and the revised cost reports and hearing procedures were explained to Wilson Clinic at that time. The hospital's CPA and attorney requested additional time to review the adjustments. Twenty-one (21) days were granted for Wilson Clinic to provide any additional data to negate or modify the proposed adjustments by Provider Reimbursement.

"On July 28, a conference was held at the Provider Reimbursement Department where the attorney and CPA for Wilson Clinic submitted additional data. Some of the adjustments were revised as a result of this additional data.

"The CPA representing Wilson Clinic requested that he have until August 2 to further review the adjustments. This request was granted.

"The CPA did not show up on August 2, 1972.

"On August 7, 1972, forms and instructions for the hearing procedure were provided to Wilson Clinic. . . .

"On August 24, 1972, Wilson Clinic was advised of an overpayment due for September 30, 1966; on August 28, 1972, Wilson Clinic was advised of an overpayment due for September 30, 1967; and August 29, 1972, Wilson Clinic was advised of an overpayment due for September 30, 1968; on August 31, 1972, Wilson Clinic was advised of an overpayment due for the year ended September 30, 1969; on September 6,

---

3. The regulations are referred to by the number of the embodying section of 20 CFR.

4. In the District Court Clinic did not charge Blue Cross with a failure to meet any condition for suspension. Now, however, in brief Clinic for the first time makes the point that no finding was made by the intermediary that suspension was "needed to protect the program". For support, reference is made to regulation 405.370(b) reciting in substance that no suspension shall be effectuated without such a finding. We do not think we should consider on appeal a non-jurisdictional point not made before the District Court. Preferred Risk Mut. Ins. Co. v. Thomas, 372 F.2d 227, 232 (4 Cir. 1967); United States v. Ferguson, 368 F.2d 324, 325, n. 1 (4 Cir. 1966); McGowan v. Gillenwater, 429 F.2d 586, 587 (4 Cir. 1970).

1972, Wilson Clinic was advised of an overpayment due for the year ended September 30, 1970; and on September 7, 1972, Wilson Clinic was advised of an overpayment due for the year ended September 30, 1971.

"In each of these it was stated that payment of the *balances was due upon receipt of this notice* and that Provider Reimbursement *must automatically deduct* from future remittances *if payment were not reached* within thirty (30) days." (Accent added.)

After the suit was filed by Clinic on September 20, 1972, nothing further was done by intermediary in the way of suspensions. On October 3, 1972 the hospital provider formally asked for a hearing on the amount of its entitlement to reimbursement. It did not further prosecute this request, by refutation of the findings of overpayments or otherwise.

Finally, the decisive question before the court then is whether the administrative procedures, as pursued by the intermediary, afforded due process for determination of Clinic's reimbursements.

■ To start with, the Act directs the Secretary in compensating the provider to make "necessary adjustments on account of previously made overpayments or underpayments". 42 U.S.C. § 1395g. In participating in the program, of course, Clinic subjected itself to this method of initial reconciliation. Nowhere does the statute condition the Secretary's exercise of this power upon a judicial hearing. But the statute apart, the Secretary may take this action under the aegis of administrative law, and reliance is not here placed exclusively upon the words of the statute.

■ Admittedly, however, such interlocutory adjustments, administratively made, will not be sustained unless they are accomplished with due process. This obligation is obeyed here in the scrupulous practice of notice, hearing, and advice of the right of review in fact for the determination and adjustment of the reimbursement. In sum, the intermediary's conduct fully accorded the provider administrative due process.

Judicial precedent requires no more. First, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), vouches this position. There State welfare payments had been discontinued without first giving the recipient notice of the proposed termination. On his application the District Court enjoined the indicated action because "only a pre-termination evidentiary hearing would satisfy the [due process clause] command". Id. 261, 90 S.Ct. 1016. Affirming, *Goldberg* instructed in these opinion excerpts:

"The constitutional issue to be decided, therefore, is the narrow one whether the Due Process Clause requires that the recipient be afforded an evidentiary hearing *before* the termination of benefits." p. 260, 90 S. Ct. p. 1016.

"We also agree with the District Court, however, that the pre-termination hearing need not take the form of a judicial or quasi-judicial trial. . . . Accordingly, the pre-termination hearing has one function only: to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits. . . . Thus, a complete record and a comprehensive opinion, which would serve primarily to facilitate judicial review and to guide future decisions, need not be provided at the pre-termination stage". pp. 266–267, 90 S.Ct. p. 1020.

" 'The fundamental requisite of due process of law is the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363] (1914). The hearing must be 'at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965). In the present context these principles require that a recipient have timely and adequate

notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." pp. 267–268, 90 S.Ct. p. 1020.

As is evident, the procedure ordained in *Goldberg* is the pattern traced by the Secretary.

In summary, we find no basis for the injunction and the District Court should vacate it. Nothing we say is intended to adjudicate any other point or to preclude Clinic from obtaining a review of the present computations of reimbursement, if that relief is now obtainable under the regulations.

Vacated and cause remanded.

BOREMAN, Senior Circuit Judge (dissenting):

With due regard for the majority and its opinion I feel compelled to note my disagreement. Preliminarily, I am concerned with the breadth or scope of review of the district court's award of the temporary injunction [1] as envisioned and assumed in the majority opinion.[2] In reviewing such interlocutory decisions restraint is to be exercised:

"[L]imited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief."

United States Steel Corp. v. Fraternal Association of Steelhaulers, 431 F.2d 1046, 1048 (3 Cir. 1970). The record before us is not complete; as noted in the majority opinion, "[t]he cause was heard on Blue Cross' motion to dismiss." As discussed below, on the basis of the material now before us, I think Clinic has established a prima facie case and is entitled to the benefits and protection of a temporary injunction pending an opportunity for both parties to fully develop the case on its merits.

The majority has chosen to approach and treat this case as though it had been tried on the merits. I am not persuaded that this is a proper exercise of judicial restraint. "It must be borne in mind that the parties did not submit the case to the trial court on its merits. It can not be gainsaid that the questions of law and fact to be ultimately determined in the action are grave and difficult." Benson Hotel Corp. v. Woods, 168 F.2d 694, 697 (8 Cir. 1948). The instant case clearly presents a situation calling for application of the rule that an appellate court reviewing an interlocutory injunction should not "go any further into the merits of the case than is necessary to decide the matter upon appeal." 9 J. Moore, Federal Practice ¶ 110.25 [1], at 269–70 (2 ed. 1973 revision) (footnote omitted).

The majority has undertaken to resolve the question of whether Blue Cross could reopen the settlement agreement which it had previously entered into with the Clinic. While I recognize, as does the majority, "that the point may later have to be decided," I do not believe that question is properly before us at this

---

1. Blue Cross was enjoined and restrained from withholding funds currently due the Clinic "pending the evidentiary hearing on the merits of this case."

2. The vice of attempting to make a final disposition of a case upon a motion for a temporary injunction was considered in Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774 (1940).

 We think the court committed serious error in thus dealing with the case upon motion for temporary injunction. The

question before it was not whether the act was constitutional or unconstitutional; was not whether the Commission had complied with the requirements of the act, if valid, but was whether the showing made raised serious questions, under the federal Constitution and the state law, and disclosed that enforcement of the act, pending final hearing, would inflict irreparable damages upon the complainants. *Id.* at 316, 60 S.Ct. at 520.

time. The fact that a speedy determination of a question "is of the utmost importance to all of the parties" does not justify deciding it on an interlocutory appeal. Ex parte National Enameling and Stamping Co., 201 U.S. 156, 162, 26 S.Ct. 404, 406, 50 L.Ed. 707 (1906). An interlocutory appeal "cannot be equated with an appeal from a final disposition on the merits." Industrial Bank of Washington v. Tobriner, 132 U.S.App.D.C. 51, 405 F.2d 1321, 1323–1324 (1968). "The only questions which arise under the special or limited appeal from an interlocutory decree granting a preliminary injunction are those which are necessarily involved by the allowance of the injunction pendente lite." City of Owensboro v. Cumberland Telephone and Telegraph Co., 174 F. 739, 747 (6 Cir. 1909); see also 7 J. Moore, Federal Practice ¶ 65.21 (2 ed. 1973 revision).

Another consideration makes a decision on that issue at this time particularly inappropriate. Although the district judge stated that he did "not doubt the authority of the defendants to recover amounts erroneously paid to the providers under the Act . . .," that point was not appealed by Clinic. Blue Cross, in whose favor such a decision would operate, originally argued that question on appeal, but subsequently *conceded* that, in the absence of a cross-appeal by Clinic, the "sole issue before this Court is 'whether the Provider [Blue Cross] can withhold current medicare payments due the Hospital before an evidentiarly hearing is held on the matters in dispute.'" If Clinic chooses to wait until the record is fully developed to appeal from such a final decision it should be allowed to do so. Since Clinic has not briefed or argued this question on appeal I shall refrain from expressing any opinion with respect to the conclu-

sion reached by the majority on what is presently nothing more than an abstract proposition of law.[3]

Because of the majority's ultimate disposition of this appeal, I feel compelled to discuss the merits of Clinic's due process claim. The procedures adopted by the Secretary do provide for a hearing by an *impartial decision maker* at some point in time. Whether this hearing is to be a pre-termination of benefits hearing or a post-termination of benefits. hearing is not established. Applying the regulations to the facts recited by the majority, Clinic was informed on August 7, 1972, of the administrative appeal procedure. Clinic had sixty days to appeal Blue Cross' decision to an impartial decision maker. Commencing on August 24, 1972, Clinic began receiving notices of final reimbursements claimed to be due; each notice stated that if remittance of claimed overpayments was not received in thirty days Blue Cross would automatically suspend payments of amounts currently due Clinic. Obviously the date of suspension was in no way tied to a final decision by an impartial decision maker. There is nothing in the regulations to guarantee that the hearing would be of a pre-termination of benefits nature. The question then becomes whether, under the circumstances of this case, due process mandates a pretermination hearing.

Blue Cross cites Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), (which, on its facts, called for a hearing prior to termination of benefits) for the proposition that "some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." 397 U.S. at 263, 90 S.Ct. at 1018. Apparently the majority has relied on this statement in holding that the procedure involved here did meet the

3. Blue Cross initially asserted that reopening was authorized by 20 C.F.R. § 405.499g. It is clear that if that regulation is found to be controlling the three year *statute of limitation set forth therein* may bar recovery of at least a part of the amount in dispute.

The record in this interlocutory appeal is not sufficiently complete to resolve this issue. This demonstrates the danger of making a final determination at this stage of the proceedings.

requirements of due process, albeit a post-termination of benefits hearing was probable. I am of the opinion that a close reading of *Goldberg* indicates that a pre-termination hearing is required to satisfy due process under the facts as developed in this record.

In *Goldberg* the Court stated:

"The extent to which procedural due process must be afforded the recipient . . . depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. . . . [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action." 397 U.S. at 262–263, 90 S.Ct. at 1017 (citations omitted).

The Court established what has been called a "balancing" or "weighing" test. Morrissey v. Brewer, 443 F.2d 942 (8 Cir. 1971); Caulder v. Durham Housing Authority, 433 F.2d 998 (4 Cir. 1970). In *Goldberg* the recipients' need for welfare benefits and the Government's interest in providing for the dignity and well being of all its citizens were balanced or weighed against the countervailing governmental interest in protecting public revenues. The Court observed that the recipients involved were probably judgment proof, thus creating a compelling interest of the Government to make sure that public revenues were not lost on ineligible recipients. Nevertheless, the Court held that, in balancing the interests, the recipients' "brutal needs" and the Government's interest in a continuing viable program outweighed the countervailing governmental interest in protecting public funds.

*Goldberg* does not leave us with the cold statement that some benefits can be terminated only with a pre-termination hearing while others require only a post-termination hearing. A balancing test is provided whereby the circumstances of each case can be analyzed and weighed to determine whether due process is served by the hearing procedure to be employed. The majority here merely recites the facts and procedures involved in concluding that due process was satisfied but without the analysis or weighing as called for in *Goldberg*.

Although incomplete, the record does indicate that Clinic received approximately one-third of its income for current operations from the Medicare program. Any reduction or suspension of estimated monthly payments for current services being rendered under the program would naturally lead to substantial cutbacks in supplies and services. Although the effect of such suspension might not be as severe as was the effect of withdrawal of payments on recipients in *Goldberg* the withholding of funds from Clinic would substantially affect the very means by which it operates. Naturally the ones to suffer would be those elderly persons in need of medical treatment. The Government's interest in providing continuing complete and competent medical service and care for the elderly would be frustrated. The interest that counseled the creation of Medicare counsels as well its uninterrupted continuation for those who should receive it. Thus, as in *Goldberg*, there appear to be valid and compelling reasons to continue providing payments to Clinic unless a pre-termination of benefits hearing determines otherwise. Concededly the interests here involved might not reach the "brutal needs" of the welfare recipients in *Goldberg* yet the balance should tip in Clinic's favor since there has been no showing here, as there was in *Goldberg*, that the countervailing governmental interest in protecting public funds is present. In *Goldberg* the recipients were judgment proof and once money was disbursed to ineligibles by the Government there was little or no chance of ever regaining amounts which had been paid. The trial judge succinctly described the situation present here in his order denying a motion to stay the injunction:

"There has been no showing in this case that irreparable damage will be

done . . . . As pointed out in the previous Order of the Court, it appears inconceivable that even if plaintiff [Clinic] should withdraw from the Medicare Program that its assets would be squandered or depleted to the extent that the defendant [Blue Cross] could not properly be reimbursed."

Thus, on the merits, the balancing test of *Goldberg* leads me to conclude that a pre-termination of benefits hearing was essential here in order to satisfy due process requirements.

As before stated, it is my view that the case is not properly before us for a decision on the merits. Faced with an incomplete record and concerned with an order denying a motion to dismiss a complaint seeking temporary injunctive relief, I conclude that the reasoning of this court in Caulder v. Durham Housing Authority, 433 F.2d 998 (4 Cir. 1970) (Winter, J.), should control:

> "Both *Goldberg* and *Escalera* [Escalera v. New York City Housing Authority, 425 F.2d 853 (2 Cir. 1970)] also recognize the possibility that in some instances the right to procedural due process must bend to a compelling governmental interest in summary adjudication. 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' . . . We do not foreclose this possibility here. But this case was decided on motion to dismiss, and governmental interests, if any, competing with plaintiff's apparent rights have *not been developed in this record*. If there are compelling competing governmental interests, they may be developed on remand and weighed by the district court, which may then decide the effect to be given them." 433 F.2d at 1004 n. 3 (emphasis added, citation omitted).

Finally, in its brief, Clinic objects to Blue Cross' failure to comply with 20 C.F.R. § 405.370(b). That section provides in part:

> "A suspension shall be put into effect only after . . . the intermediary or carrier [Blue Cross] has determined that the suspension of payments, in whole or in part, is needed to protect the program against financial loss."

Absent the determination that suspension is necessary to protect public funds, Clinic contends that Blue Cross should be prevented from suspending future payments until a pre-termination hearing could be held. The majority refuses to consider this contention, noting that the matter was raised for the first time on appeal. It is apparent, however, from its denial of Blue Cross' motion to stay that the district court *did* consider the point:

> "There has been no showing in this case that irreparable damage will be done . . . . [I]t appears inconceivable that even if plaintiff [Clinic] should withdraw from the Medicare Program that its assets would be squandered or depleted to the extent that the defendant could not properly be reimbursed."

Even if Clinic did not raise the point below, clearly the judge took cognizance of it. If the case is to be treated on appeal as ripe for consideration on the merits there would appear to be no valid policy reason to support the majority's refusal to consider the point. The language in the Secretary's own regulation is clear. Suspension shall be put into effect only after a determination that it is needed to protect the program. Clearly this requirement has not been met and Blue Cross should, therefore, be enjoined from suspending payments.

> "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). There, the Supreme Court vacated a

deportation order of the Board of Immigration because the procedure leading to the order did not conform to the relevant regulations. The failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due process." United States v. Heffner, 420 F.2d 809, 811–812 (4 Cir. 1969) (Winter, J.) (Bryan, J., dissenting).

Having concluded that, under the circumstances Clinic had a right to a hearing prior to the suspension of future payments, I note Blue Cross' contention that this action should be dismissed because of the alleged failure of Clinic to exhaust the administrative remedies. On August 24, 1972, Blue Cross informed Clinic that unless the disputed overpayments were repaid within thirty days the amounts would be automatically deducted from future payments due. On September 20, 1972, prior to formally requesting an administrative hearing, Clinic filed this suit seeking injunctive relief. Blue Cross insists that in the absence of a previous request for a hearing this suit was premature and should be dismissed. I do not agree. The notice of intent to suspend future payments until the disputed amount was recovered by Blue Cross and regulations respecting such suspensions do not provide for an extension of time beyond the thirty days when a hearing is requested. It was the announced intention of Blue Cross to initiate the suspension of payments process after thirty days without regard to or mention of a request for a hearing. I find no *administrative* procedure whereby Clinic could protect its right to a pre-termination hearing. Only by enjoining such suspension of payments by Blue Cross, pending a hearing, could Clinic protect its rights. The very fact that Clinic subsequently formally requested a hearing within the allowable time period demonstrates that this action was not instituted for the purpose of by-passing the administrative process. I would affirm.