46 F.3d 1125
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard LEONARD, Individually; Regina Dent, Individually
and as Co-Personal Representatives of the Estate
of Regina A. Leonard, Plaintiffs-Appellees,
v.
NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Appellant.
 No. 94-1421.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 26, 1994.
Decided Jan. 18, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey II, Senior District Judge. (CA-93-836-H)
 ARGUED: Patricia McHugh Lambert, SMITH, SOMERVILLE & CASE, Baltimore, MD, for Appellant.
 D.Md.
 REVERSED AND REMANDED.
 
 
 1
 John Lynam Dowling, Olney, MD, for Appellees.
 
 
 2
 ON BRIEF: James R. Boykins, Washington, DC, for Appellee Dent.
 
 
 3
 Before LUTTIG and WILLIAMS, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 
 OPINION
 WILLIAMS, Circuit Judge:
 
 4
 Defendant-Appellant Nationwide Mutual Insurance Company (Nationwide) appeals the summary entry of a declaratory judgment in favor of Appellees Richard Leonard and Regina Dent. Ruling on cross-motions for summary judgment, the district court found that the "household exclusion" contained in a Nationwide automobile liability insurance policy was invalid because Nationwide failed to comply with the notice requirements contained in section 240AA of the Maryland Insurance Code. Md. Ann.Code art. 48A, Sec. 240AA (1991). Nationwide contends that the district court did not have jurisdiction to render the declaratory judgment and, thus, should have dismissed the case. Alternatively, Nationwide contends that the district court erred in finding the household exclusion invalid because Nationwide properly complied with section 240AA of the Maryland Insurance Code. For the reasons discussed below, we reject Nationwide's jurisdictional assertions. As to the merits, however, we agree with Nationwide's contentions and accordingly reverse and remand for further proceedings in accordance with this opinion.
 
 I.
 
 5
 The facts before the district court for the purpose of summary judgment on the Sec. 240AA issue are undisputed. On March 10, 1992, Reigna Leonard died in an automobile accident while riding as a passenger in a car driven by her stepfather, Teffy Dent, who also died in the accident. At the time of the accident, Teffy Dent and Appellee Regina Dent, his wife, were living together in a single household with two minor children: Reigna Leonard, Regina Dent's daughter by a previous marriage to Appellee Richard Leonard, and Reigan Dent.[1]
 
 
 6
 At the time of the accident, both Teffy Dent and his wife Regina were insured under a "Century II Auto Policy," originally issued by Nationwide on August 30, 1990. Under the terms of the original policy, the Dents were insured for damages resulting from the ownership, maintenance, or use of their covered automobiles. The policy defined the term "damages" to include "bodily injury, sickness, disease or death of any person," and further provided that "[a]nyone living in your household has this protection." (J.A. 279.)
 
 
 7
 The original policy, written for a six-month period, provided that Nationwide would renew the policy for successive periods, subject to the following conditions:
 
 
 8
 (a) Renewal will be in accordance with policy forms, rules, rates and rating plans in use by [Nationwide] at the time.
 
 
 9
 (b) All premiums or premium installment payments must be paid when due.
 
 
 10
 (c) At the end of each policy period, [Nationwide] will have the right to refuse to renew any coverage or the entire policy.
 
 
 11
 (J.A. 279.) The policy further provided that in the event Nationwide elected not to renew, it would mail written notice to the insured forty-five days in advance of the effective date of non-renewal. The Dents properly renewed and paid for their policy through the end of February 1992. During this period the policy contained no exclusion or limitation of coverage for injury or death to an insured or to a family member of an insured. Nationwide contends, however, that the policy which was renewed by the Dents effective February 1992 incorporated a "household exclusion" provision which limited the liability of Nationwide for bodily injury to an insured or to any family member of an insured living in the same household.
 
 
 12
 In this regard, the record reflects that on or about May 30, 1991, Nationwide submitted for approval to the Commissioner of the Maryland Insurance Division (Commissioner) two proposed "amendatory endorsements" to Nationwide's basic Century II Auto Policy with respect to Maryland policyholders. The Commissioner approved Endorsement 1952C on or about August 6, 1991, thereby incorporating its language into all existing Century II Auto policies effective as of the next renewal date after September 1, 1991. For the Dents' Century II Auto Policy, the first policy renewal date after September 1, 1991, was February 29, 1992.
 
 
 13
 On February 5, 1992, Nationwide mailed to the last known address of Teffy Dent a "renewal package" consisting of some twenty-seven pages of printed material including (1) a one-page notice with printing on both sides addressed "To Maryland Policyholders;" (2) a declarations page/renewal billing notice; (3) a copy of the sixteen-page basic Century II Auto Policy; (4) a four-page document entitled "Endorsement 2321, uninsured motorists coverage (Maryland);" and (5) a four-page document entitled "Endorsement 1952C, amendatory endorsement (Maryland)." Endorsement 1952C sets forth the household exclusion at issue.
 
 
 14
 Although the record below did not disclose the precise order in which the documents were arranged in Nationwide's renewal package, the notice states by way of introduction that "[t]he enclosed endorsements and Declarations page have been prepared to update your Nationwide Century II Auto Policy. The changes will be effective with the renewal of your policy." (J.A. 20.) The Notice further contains what Nationwide characterized as "major changes that may affect your coverage":
 
 
 15
 Under COVERAGE EXCLUSIONS, ... [i]tem 9 is added to exclude coverage for bodily injury to any insured or family member insured, caused by an insured, for any amounts above the minimum limits required by Maryland law.
 
 
 16
 (J.A. 281.) Item 9 of Endorsement 1952C adopts the language previously approved by the Commissioner. It provides as follows:
 
 
 17
 9. [The policy] does not cover bodily injury to any insured or any resident family member in an insured's household. However, this exclusion applies only to the extent that the limits of liability for this coverage exceed the limits of liability required by Maryland law.[2]
 
 
 18
 (J.A. 282.)
 
 
 19
 After mailing the first renewal package to Teffy Dent on February 5, 1992, Nationwide learned that Dent had moved to a new address. On March 6, 1992, Nationwide mailed another renewal package, containing the same documents described above, to Teffy Dent at his new address. The district court established that prior to the occurrence of the fatal accident on March 10, 1992, Teffy Dent actually did receive at least one of the renewal packages mailed by Nationwide.
 
 
 20
 Following the submission of cross-motions for summary judgment, the district court concluded as a matter of law that the household exclusion was invalid under Sec. 240AA of the Maryland Insurance Code. The district court further noted that it did not consider any of the other grounds of invalidity urged by Appellees.[3] On February 28, 1994, the district court entered a declaratory judgment against Nationwide and in favor of Richard Leonard and Regina Dent. Nationwide appeals.
 
 II.
 
 21
 We review de novo the grant of summary judgment by a district court. Roe v. Doe, 28 F.3d 404, 406 (4th Cir.1994); Baber v. Hospital Corp. of America., 977 F.2d 872, 874-75 (4th Cir.1992). Furthermore, when a district court sits in diversity, it is bound by applicable state substantive law. 28 U.S.C.A. Sec. 1652 (1994); Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Roe, 28 F.3d at 407. Thus, we revisit de novo the district court's interpretation of applicable Maryland law.
 
 A.
 
 22
 Nationwide raises for the first time on appeal what it characterizes as a jurisdictional issue, requesting that this court vacate the decision of the district court because it lacked subject matter jurisdiction to determine whether Nationwide's actions violated Sec. 240AA. In support of this contention, Nationwide asserts that Sec. 240AA provides an exclusive avenue of relief which includes administrative proceedings and provisions for judicial review of administrative decisions. Nationwide concludes that because Appellees failed to exhaust their administrative remedies as set forth in Sec. 240AA, the district court lacked the requisite jurisdiction to reach the merits of the case. We disagree.
 
 
 23
 The doctrine of exhaustion of administrative remedies is not, absent clear legislative intent, a question of jurisdictional import. McCarthy v. Madigan, 112 S.Ct. 1081, 1086 (1992); Wilson Clinic & Hospital, Inc. v. Blue Cross of South Carolina, 494 F.2d 50, 53 n. 4 (4th Cir.1974). Thus, failure by one party to exhaust such remedies does not normally divest a trial court of jurisdiction. Maryland-National Capital Park & Planning Comm'n v. Crawford, 511 A.2d 1079, 1085 n. 4 (Md.1986); Medical Mutual v. B. Dixon Evander & Assoc., Inc., 609 A.2d 353, 358 n. 3 (Md. Ct. Spec.App.1992). Furthermore, failure by a party to raise a non-jurisdictional defense such as exhaustion in the first instance at the trial court precludes that party from doing so on appeal. Bituminous Coal Operators Ass'n. v. Secretary of Interior, 547 F.2d 240, 244 (4th Cir.1977); Wilson Clinic, 494 F.2d at 53 n. 4.
 
 
 24
 Although Nationwide contends that it raised the exhaustion issue in its Answer, a review of Nationwide's filing reveals no clear assertion of this defense.[4] Furthermore, our reading of the administrative review provisions set forth in Secs. 240AA(d) through 240AA(h) reveals no intent by the Maryland legislature to raise exhaustion of administrative remedies to the level of a jurisdictional bar. Indeed, there is no language in the statute reflecting that such exhaustion is a predicate or condition for the exercise of jurisdiction by any court. We, therefore, reject Nationwide's contention with regard to the jurisdiction of the district court.
 
 B.
 
 25
 Nationwide next argues that the household exclusion was part of a general reduction in coverage approved by the Commissioner and that the plain language of Sec. 240AA does not apply to an approved general reduction in coverage. Nationwide contends that the district court simply ignored the language in question in violation of established principles of statutory construction. Appellees, however, contend that the district court considered all available materials and made an informed prediction of state law, properly determining that Nationwide violated the notice requirements of Sec. 240AA.
 
 
 26
 In revisiting the district court's interpretation of Maryland law, we note the primary function of the state legislature in formulating public policy. Guiness PLC v. Ward, 955 F.2d 875, 885-86 (4th Cir.1992) (quoting Jones v. Malinowski, 473 A.2d 429, 437 n. 4 (Md.1984)). Thus, we accord great weight to statutory law and relevant canons of statutory construction in discerning applicable state law. In Maryland, the cardinal rule of statutory construction is to ascertain and effectuate legislative intent. Rose v. Fox Pool Corp., 643 A.2d 906, 909 (Md.1994); Gargagliano v. State, 639 A.2d 675, 678 (Md.1994); Comptroller of Treasury v. Jameson, 633 A.2d 93, 97 (Md.1993).
 
 
 27
 When called upon to construe a particular statute, we begin with the statutory language itself since the words of the statute, construed according to their plain meaning, are the primary source and most persuasive evidence of legislative intent. Rose, 643 A.2d at 909; Gargagliano, 639 A.2d at 678. Furthermore, where statutory language is free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention contrary to its plain meaning. Fikar v. Montgomery County, 635 A.2d 977, 979 (Md.1994); Potter v. Bethesda Fire Dep't, Inc., 524 A.2d 61, 63-64 (Md.1987).
 
 
 28
 We discern no ambiguity in Sec. 240AA, which provides in pertinent part:
 
 
 29
 Sec. 240AA. Procedure for cancellation, nonrenewal, increase in premium or reduction of coverage under motor vehicle liability insurance policy.
 
 
 30
 (a) Compliance with article.--Except in accordance with the provisions of this article, no insurer other than the Maryland Automobile Insurance Fund shall (i) cancel or fail to renew a policy of motor vehicle liability insurance or a binder of motor vehicle liability insurance, if the binder is in effect for 45 days or longer, issued in this State, as to any resident of the household of the named insured, for any reason other than nonpayment of premium, or (ii) increase a premium for any coverage on any such policy unless the increase is part of a general increase in premiums approved by the Commissioner and does not result from a reclassification of the insured, or (iii) reduce the coverage under any such policy unless the reduction is part of a general reduction in coverage approved by the Commissioner or to satisfy the requirements of Secs. 539 through 541 of this article, inclusive.
 
 
 31
 (b) Notice to insured.--An insurer intending to take an action subject to the provisions of this section shall, on or before 45 days prior to the proposed effective date of the action, send written notice of its intended action to the insured at his last known address. A written notice of cancellation or nonrenewal shall be sent by certified mail. All other notices of action subject to the provision of this section shall be sent by certificate of mailing.
 
 
 32
 Md. Ann.Code art. 48A, Sec. 240AA (1991) (emphases added). On its face, the language of Sec. 240AA does not require an insurer to provide notice of all actions it intends to take. Namely, subsection (b) imposes notice requirements in those situations "subject to the provisions of this section." The scope of applicability of Sec. 240AA is set forth in detail in subsection (a). Thus, in order to determine what actions are governed by subsection (b), a court must determine the scope of its application by reference to subsection (a). The first clause of subsection (a) makes the provision of this section applicable to three enumerated types of action: (i) policy cancellations, (ii) premium increases, and (iii) coverage reductions. However, Sec. 240AA(a)(ii) & (iii) premium increases and coverage reductions, to the extent they constitute "part of a general increase in premiums approved by the Commissioner" or "part of a general reduction in coverage approved by the Commissioner," are exempt from Sec. 240AA requirements. This is true particularly as to the notice provision of Sec. 240AA(b). Thus, general reductions in coverage that are approved by the Commissioner are not subject to Sec. 240AA(b) notice requirements, namely because such actions become a matter of public record through the administrative approval process by which they are ratified.
 
 
 33
 The district court in its narrow consideration of the validity of the household exclusion under Sec. 240AA did not rely on the plain language of the statute. Rather, the court based its understanding of Maryland law on a state trial court decision which imposed a notice requirement on the insurer, notwithstanding the plain language of Sec. 240AA. GEICO v. Ropka, 536 A.2d 1214 (Md. Ct. Spec.App.1987) ( Ropka I), cert. denied, 541 A.2d 964 (Md.1988), on remand, GEICO v. Ropka, No. CV-0852 (Cir. Ct. for Carroll County, Nov. 30, 1988) (Ropka II), aff'd, GEICO v. Ropka, No. 26, Sept. Term 1989 (Md. Ct. Spec.App., Sept. 29, 1989) (Ropka III ).
 
 
 34
 In Ropka I, 536 A.2d at 1225, the Maryland Court of Special Appeals remanded both common law and Sec. 240AA statutory claims to the state trial court.[5] With respect to the Sec. 240AA claim, the court simply noted: "the trial court did not consider the applicability of Sec. 240AA." Id. at 1226. Declining to decide the issue itself, the court further stated:
 
 
 35
 Considering common law notice requirements sub silentio, Judge Gilmore may have concluded as trier of the fact that (1) because there was no evidence of a cover letter or other explanatory document[,] the first page of the seven pages of amendments sent to Mr. Chilcoat in 1979 was not adequate notice and, therefore, the former coverage was still applicable; and/or (2) because there was no evidence of a reduction in the premium and since the Court of Appeals in State Farm apparently suggested that non-reduction of a premium might be a factor, the consideration was not adequate on the part of GEICO and, thus, the former coverage still obtained; and/or (3) that Sec. 240AA applied to any reduction in coverage including a general reduction and since GEICO had not complied with Sec. 240AA(b), then the former coverage applied.
 
 
 36
 Of course, we do not decide whether such determinations are correct because they are not properly before us.
 
 
 37
 Id. at 1228 n. 7. On remand, the state trial court interpreted Sec. 240AA as follows:
 
 
 38
 [the court] need not look beyond the text of the statute to [interpret Sec. 240AA]. GEICO was attempting to reduce Chilcoat's coverage, "an action subject to the provision" of 240AA. We read the requirement of subsection (b) to clearly apply to a general reduction of coverage approved by the commissioner. As it was not complied with, GEICO cannot enforce the reduction.
 
 
 39
 Ropka II at 3. This conclusory language provides no reasoned analysis of the statutory language of Sec. 240AA and ignores the import of the exceptions set forth in Secs. 240AA(a)(ii) & (iii). The exemption from compliance for general reductions in coverage approved by the Commissioner, as explicitly set forth in Sec. 240AA(a)(iii), is neither mentioned nor discounted in the state trial court's opinion.
 
 
 40
 The reliance of the lower court on Ropka II would be less troublesome had the Maryland Court of Special Appeals, in Ropka III, affirmed Ropka II on the basis of its Sec. 240AA analysis. The Maryland Court of Special Appeals, however, in a per curiam opinion, affirmed the trial court's opinion on the basis of its common law notice analysis. Ropka III at 4 ("Since our disposition of this appeal will be based on Issue I [common law notice], we will not address issues II [Sec. 240AA analysis], III and IV."). Thus, the Maryland Court of Special Appeals, in an unpublished opinion, declined to comment on the trial court's invalidation of the household exclusion provision under Sec. 240AA.
 
 III.
 
 41
 When a federal trial court sits in diversity, it is bound by applicable state substantive law. 28 U.S.C. Sec. 1652; Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Although the judicial decisions of a state constitute the laws of that state as defined in the Judicial Decision Act, 28 U.S.C. Sec. 1652, the decisions of its lower courts are not controlling in instances where the highest court of the state has not spoken on the point. Commissioner v. Bosch, 387 U.S. 456, 464-6 (1967). Furthermore, although the decision of an intermediate appellate state court provides guidance in ascertaining state law, it must be disregarded if other persuasive authority suggests that the highest court of the state would decide otherwise. Id. at 465; West v. A.T. & T., 311 U.S. 237 (1940). The language of Sec. 240AA, because it is unambiguous, constitutes such persuasive authority. We are therefore not free to disregard its meaning. Fikar, 635 A.2d at 979; Potter, 534 A.2d at 63-64. Accordingly, we conclude that the district court erred in its reliance on the decision of a state trial court in Ropka II. Furthermore, the decisions of the Maryland Court of Special Appeals in Ropka I and Ropka III fail to support the conclusion that a general reduction in coverage approved by the Maryland Insurance Commissioner is subject to the notice provisions of Sec. 240AA. Indeed these decisions entirely avoid the issue.
 
 
 42
 The district court issued a narrow decision which, rather than addressing all of the issues raised by the parties on summary judgment, disposed of the case based on its understanding of Sec. 240AA. We, therefore, reverse the decision of the court as to the Sec. 240AA issue and hold that the notice provisions of Sec. 240AA of the Maryland Insurance Code are not applicable to a reduction in coverage that is part of a general reduction in coverage approved by the Maryland Insurance Commissioner. Finally, we remand this case to the district court for consideration, consistent with this opinion, of those issues not addressed in its earlier decision.
 
 
 43
 REVERSED AND REMANDED.
 
 
 
 [1]
 In litigation pending in state court at the time of the district court's grant of summary judgment, Appellees asserted claims against the Estate of Teffy Dent, alleging that Dent's negligence proximately caused the death of their daughter, Reigna Leonard. Although acknowledging its duty to defend the estate of the insured against Appellees' claims, Nationwide asserted that its liability under the Dents' policy was limited by a "household exclusion" provision which restricts coverage under the policy for "bodily injury to any insured or any resident family member of an insured's household," to the statutory minimum of coverage required by Maryland law. (J.A. at 276.)
 
 
 [2]
 The minimum limits of liability coverage required by Maryland law are $20,000 per person and $40,000 per occurrence. Md. Transp. Code Ann. Sec. 17-101--17-110 (1992)
 
 
 [3]
 These other grounds included: 1) The exclusion is invalid under common law principles because Nationwide failed to provide the Dents with adequate and reasonable notice of the reduction in coverage effected by the exclusion; 2) The exclusion fails for a lack of consideration, since there was no reduction in premium in consideration for the substantial reduction in coverage which the exclusion effected; 3) The exclusion is unenforceable under applicable Maryland law because there is no possibility of collusion between the claimant and the insured, both of whom are deceased. (J.A. at 276-77, 278 n. 2.)
 
 
 [4]
 As part of its Answer, Nationwide asserted as its third defense that the district court lacked subject matter jurisdiction but did not elaborate further
 
 
 [5]
 The underlying facts giving rise to the Ropka court's discussion of the notice issue are similar to those in the instant case. The insured, Michael Chilcoat, his wife, and two daughters were killed in an automobile accident. Michael Chilcoat was driving the automobile involved in an accident with a truck operated by Consolidated Rail Corporation (Conrail). The personal representatives of the four decedents filed a wrongful death action against Conrail and the Pennsylvania Department of Transportation. Those defendants in turn filed a third-party claim against the estate of Michael Chilcoat, seeking contribution and/or indemnification because he was the driver of the vehicle. Frances Ropka, the personal representative of Michael Chilcoat's estate, demanded that GEICO, Michael Chilcoat's insurer, defend against the third-party claim. GEICO refused to defend the third-party action arguing that a "household exclusion" in the policy protected it from liability. Ropka I, 536 A.2d at 1215